**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BERKLEY ASSURANCE COMPANY,** | |
| **Plaintiff,** | |
| **v.** | Case No.: 21-cv-5303 |
| **ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.,** | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

**COMPLAINT**

Plaintiff Berkley Assurance Company ("Berkley"), by its attorneys, states as follows for its Complaint against Associated Industries Insurance Company, Inc. ("Associated"):

**INTRODUCTION**

1.      This is an insurance coverage dispute between the insurance company issuing a product recall policy and the insurance company issuing a commercial general liability insurance policy, which arises out of the commercial general liability insurer's summary denial of coverage for third-party property damage resulting in the third parties destroying or disposing of their contaminated products and the same insurer's failure to seek a declaratory judgment determining its duties and obligations to the insured. Berkley seeks to recover monies that it paid under reservation to protect its insured against third-party claims when Associated breached its duty to Berkley's and Associated's mutual insured, Bell Flavors & Fragrances, Inc. ("Bell").

**PARTIES, JURISDICTION, AND VENUE**

2.      Berkley is an Iowa insurance company with its principal place of business in Arizona.

4822-8488-7282

3.      Associated is a Florida insurance company with its principal place of business in Florida.  Associated may be served through its agent for service of process—Director, Illinois Department of Insurance, 320 W. Washington, Springfield, Illinois 62767.

4.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332(a) because Berkley and Associated are citizens of different states and the amount in dispute and that Berkley seeks to recover from Associated is in excess of $75,000.00, exclusive of interest and costs.  This Court also has jurisdiction over the subject matter pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

5.      This Court has personal jurisdiction over Associated pursuant to 735 ILCS 5/2-209(a)(4) because Associated issued a policy of insurance to Bell, whose business address is in Northbrook, Cook County, Illinois.

6.      Venue is appropriate under 28 U.S.C §1391(b)(2) because the policies that are at issue in this lawsuit were negotiated, issued, and delivered to the insured, Bell, in Northbrook, Cook County, Illinois and because Associated delivered its denial of coverage to Bell in Cook County, Illinois.

## FACTUAL BACKGROUND

**A.      The Berkley Policy**

7.      Berkley issued a Product Recall Insurance Policy to Bell covering the period December 1, 2018 through December 1, 2019 ("Berkley Policy").  A true and correct copy of the Berkley Policy is attached hereto as **EXHIBIT A**.

8.      The Berkley Policy, with a policy number BGPR012002, contains both first party Product Recall Expense Coverage with per "Covered Incident" limits of $3,000,000.00 and Product Recall 3rd Party Liability Damages Coverage with per "Covered Incident" limits of

2

$5,000,000.00 and an aggregate limit of $5,000,000.00, with both first- and third-party coverages subject to a combined $100,000 Self-Insured Retention.

9. The Product Recall 3rd Party Liability Damages Coverage Insuring Agreement provides as follows:

> We will, subject to the terms and conditions of this policy and excess of any self-insured retention, pay on your behalf for product recall 3rd party liability damages resulting directly from a covered incident, provided that such covered incident takes place in the coverage territory, and the discovery or the initial notification to us or general publication of such covered incident takes place during the policy period.

(Ex. A at BPR001_1015, § I.B., p. 1).

10. The Berkley Policy defines "Product recall 3rd Party liability damages" as "any sums that **you** become legally obligated to pay as **compensatory damages** and **your defense costs** resulting from investigation, negotiation, settlement or defense of a **claim** or **suit**." (Ex. A at BPR001_1015, ¶ M, p. 4).

11. The Berkley Policy's Government Recall and Impaired Property Endorsement amends the definition of "Covered Incident" to mean:

> … the recall, removal, recovery of possession or control, withdrawal or disposal of, or purposeful destruction of **your product(s)** from or by a distributor, purchaser, retailer, wholesaler, or user of **your product(s)** solely because the use or consumption thereof has resulted in **bodily injury**, **property damage**, or **impaired property** or because the use or consumption thereof poses actual and imminent danger of resulting in **bodily injury** or **property damage**, or **impaired property**; or because of a **government recall**.

(Ex. A at BPR005_0815, p. 1).

12. The Berkley Policy defines "property damage" to mean "physical injury to or destruction of tangible property other than **your product(s)**." (Ex. A at BPR001_1015, ¶ N, p. 4).

13. The Berkley Policy's Government Recall and Impaired Property Endorsement

3

amends the definition of "impaired property" to mean "tangible property of others that cannot be used, or that is less useful, because it incorporates **your product(s)** that is known to be deficient, defective, or inadequate; solely with respect to the coverage provided under Coverage Agreement B." (Ex. A at BPR005_0815, p. 1).

14.     The Berkley Policy defines "your product(s)" to mean:

> … those goods and products (excluding real property) shown in the Covered Products section in the Declarations, including containers (other than vehicles), materials, parts, or equipment furnished in connection therewith; and any property of others of which **your product(s)** form a part thereof; but only once **you** have released physical possession of such goods or products to others. **Your product(s)** do not include vending machines or other property renter to or located for the use of others.

(Ex. A at BPR001_1015, ¶ R, p. 5).

15.     The Berkley Policy is excess insurance per the following other insurance provision:

> O. OTHER INSURANCE:  The insurance provided under this Policy will be excess over any other valid and collectible bond or insurance.  If **you** have other insurance against a loss covered by this Policy that purports to be excess of this insurance, **we** will not be liable under this Policy for a greater proportion of such loss and **claims** expenses than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of insurance of all valid and collectible insurance against such loss.  If **you** have other insurance provided by a W. R. Berkley member company against a loss covered by this Policy, the maximum Limit of Insurance under all policies will not exceed the highest applicable Limit of Insurance available under any one Policy.

(Ex. A at BPR001_1015, ¶ O, p. 11).

**B.     The Associated Commercial General Liability Policy**

16.     Associated issued Commercial General Liability Insurance Policy No. AES1085302 01 to Bell for the policy period beginning December 1, 2018 and ending December 1, 2019 (the "Associated Policy").  The Associated Policy has a $1,000,000 per occurrence limit,

4

a $2,000,000 Products – Completed Operations Aggregate Limit, and a $2,000,000 General Aggregate Limit. The Associated Policy has a $5,000 deductible. A true and correct copy of the Associated Policy is attached hereto as **EXHIBIT B**.

17. Coverage A of the Associated Policy general liability insuring agreement states, in part:

> **1. Insuring Agreement**
>
> > **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …
>
> > …
>
> > **b.** This insurance applies to "bodily injury" and "property damage" only if:
> >
> > > **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> > >
> > > **(2)** The "bodily injury" or "property damage" occurs during the policy period …

(Ex. B at Form CG 00 01 12 07, Coverage A Insuring Agreement, § I.A.1., p. 1).

18. The Associated Policy defines "property damage" to mean, in part:

> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Ex. B at Form CG 00 01 12 07, Definitions, § V.17., p. 14).

19. The Associated Policy defines "occurrence" to mean "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions." (Ex. B at

Form CG 00 01 12 07, Definitions, § V.13., p. 14).

20. The Associated Policy defines "your product," in part, as follows:

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, qualify, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions. …

(Ex. B at Form CG 00 01 12 07, Definitions, § V.21., p. 15).

21. Coverage A Exclusions k, l, m, and n in the Associated Policy do not exclude

coverage for "property damage" to third parties' products or damages, including Bell's liability to

pay third-party damages. (*See* Ex. B at Form CG 00 01 12 07, Coverage A Exclusions, § I.A.2.,

pp. 4–5).

22. The Associated Policy provides primary coverage to Bell pursuant to the following

other insurance provision:

4822-8488-7282

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

(Ex. B at Form CG 00 01 12 07, Commercial General Liability Conditions, § IV.4., p. 10). None of the provisions in sub-paragraph b. for excess insurance applies to this claim. (*Id.* at pp. 10–11).

**C.     The Associated Umbrella Policy**

23.     Associated additionally issued a per occurrence-based umbrella liability policy bearing Policy No. EXA1055329 01 for the same policy period as the Associated Policy, which has limits of $5,000,000/$5,000,000 (the "Associated Umbrella Policy"). The Commercial Excess Liability Coverage Declarations of the Associated Umbrella Policy is attached hereto as **EXHIBIT C**.

24.     At no time has AmTrust acknowledged a claim, denied coverage, or issued a reservation of rights letter in connection with coverage under the Associated Umbrella Policy.

**D.     Bell's Product**

25.     The Bell's product at issue is Garlic Extract Oil Soluble (OS) Natural Flavoring, a "garlic flavoring" created by combining and diluting imported concentrated garlic oil in an essential oil carrier of sunflower oil and triglycerides for sale as a flavoring agent to food product manufacturers.

26.     Bell sells its garlic flavoring to a limited number of customers: Ventura Foods, Paradise Tomato, Reed Foods, Demakes, and a limited number of others. These buyers use the

7

garlic flavoring to manufacture finished goods, such as pizza and sandwich dipping sauces (for fast food restaurants such as Papa John's Pizza and Subway), barbecue Sriracha sauces, marinades and finished meat products like hot dogs, sausages and bologna.

27.     Bell has been manufacturing this garlic flavoring for the better part of 17 years and has had no customer complaints regarding taste, conformity and sales satisfaction.

### E.     Claims Against Bell

28.     On or about October 14, 2019 and October 20, 2019, Bell began receiving complaints that certain finished goods manufactured by its customer, Ventura Foods, and using Bell's garlic flavoring had an unacceptable "off flavor", described as "metallic" or "green," which was suspected to be due to a raw ingredient that Bell sourced from a Chinese supplier, AnHui Capa Bio-Tech Co. Ltd. ("AnHui").

29.     Within a short period of time after the initial complaints, Bell was advised by other customers (Paradise Tomato, Reed Foods and Demakes) that they too were experiencing complaints from their customers, which they sourced to Bell's garlic flavoring.

30.     All four companies performed root cause analysis and determined that Bell's product was the cause of their customer complaints.

31.     All four companies asserted claims against Bell arising from their use of Bell's impacted product in the customers' own finished goods (hereinafter the "Claims").

32.     Bell was able to source and trace the problem back to three lots (300 kgs) of AnHui concentrate purchased April 17, 2019, May 30, 2019 and August 12, 2019.

### F.     Bell Notifies Associated and Berkley

33.     Following the initial reporting of the potential Claims of property damage to the incorporated products of Bell's customers, Bell provided notice to both Berkley and Associated.

8

34.    Berkley received the report of potential Claims under the Berkley Policy and, in response, Berkley retained the forensic investigation group, McLarens, on or about November 19, 2019.

35.    Associated received the report of potential Claims under the Associated Policy, and on or around December 26, 2019, AmTrust North America ("AmTrust"), acting as Claims Administrator for Associated, denied coverage to Bell for the Claims without conducting any sort of investigation (much less a reasonable investigation).  The December 26, 2019 letter to Bell stated, in part:

> Please be advised that we [AmTrust] have reviewed this matter and have determined that it may not be covered under Bell's policy for the reasons set forth below.

A true and correct copy of AmTrust's December 26, 2019 letter is attached hereto as **EXHIBIT D.**

36.    In AmTrust's December 26, 2019, AmTrust contended and wrote, in part:

> Claims for breach of contract and breach of warranty are not claims for "bodily injury" or "property damage" caused by an accident or "occurrence" or "personal and advertising injury."  To the extent this matter does not involve a claim for "bodily injury" or "property damage["] caused by an accident or "occurrence" or "personal and advertising injury," no coverage is available under this policy as set forth in the above-cited provisions.

> …

> Our investigation indicates that Bell may need to recall its defective product.  As this matter involves damages claimed for loss, cost or expense incurred by Bell or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product" if such product is withdrawn or recalled form [sic] the market or from use because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it, no coverage is available under the policy as set forth in the above-cited provision.

> …

> Our investigation indicates that Bell may need to recall its

defective product.  To the extent this matter involves "property damage" caused by an "occurrence," any such damage to "your product" arising out of it or any part of it is excluded under the policy as set forth in the above cited provisions.

…

Please be advised that to the extent there is coverage for this claim, which we do not concede, there is a $5,000 deductible …

…

For the reasons set forth above, Associated is reserving its rights and to disclaim coverage for this matter to Bell.

…

… and upon receipt ["of any additional information concerning this matter, including suit papers"] we [AmTrust] will reassess Associated's coverage position.

(Ex. D).

37.     AmTrust and Associated never investigated whether Bell's product had been incorporated into third-parties' products.

38.     Associated, through AmTrust, never retained defense counsel to Bell or advised Bell of any conflicts of interest that afforded Bell the right to retain independent defense counsel at AmTrust's expense.

39.     Associated, through AmTrust, never filed a declaratory judgment action seeking a determination that there was no coverage for the Claims under the Associated Policy and/or the Associated Umbrella Policy.

**G.     Bell and Berkley Investigate and Act to Mitigate Claims While Seeking Amtrust to Reconsider Its Wrongful Denial of Coverage**

40.     Once the Claims against Bell were tendered or made to Bell and Berkley, Berkley, through McLarens, began to investigate the Claims being presented by the four previously identified customers. Forensic auditors, Meaden & Moore, were also retained to assess the

10

measurable losses.

41.     Despite Associated's wrongful denial of coverage without any investigation, Berkley's and Bell's insurance broker continued to provide Associated, through AmTrust, with information regarding the calculation and adjustment of Bell's customers' Claims several times between March 17, 2020 and April 17, 2020.

42.     On or about March 26, 2020, Bell submitted a Partial Proof of Loss and Sworn Statement to Berkley with respect to a preliminary loss estimate of $3,006,224 for Ventura Food's claim, which Berkley accepted under reservation subject to the $100,000 self-insured retention and only to the extent of $1,557,237.  Berkley subsequently issued payment directly to Ventura Foods in the amount of $1,457,237.

43.     At all times relevant, this payment was neither voluntary nor without reservation of rights as to any claims that might be asserted against Associated and was without prejudice to a further determination of the full quantum of damages owed to Ventura Foods upon further submittal of proofs and supports.  *See* **EXHIBIT E**.

44.     Despite the information provided to Associated, through AmTrust, AmTrust noted via e-mail to Bell and Berkley that its coverage position was "unchanged" on April 20, 2020.

45.     On or about June 19, 2020, Berkley, through counsel, transmitted a "Reservation and Demand for Indemnification" letter challenging Associated's denial of coverage.  To date, neither Associated nor AmTrust on Associated's behalf has responded to this June 19, 2020 letter.

46.     On or about June 24, 2020, Bell submitted a second Partial Proof of Loss and Sworn Statement per the Berkley Policy, which revised the quantum of damages accepted by Berkley under the Berkley Policy for the Ventura Claim to $2,554,577, and further agreed to make payments to Ventura Foods in the total amount of $2,454,577, which was net of the $100,000

self-insured retention.  As a result of this Proof and Statement, Berkley indemnified Bell directly in the sum of $669,955.  *See* **EXHIBIT F.**

47.     On or about June 24, 2020, Bell submitted a Partial Proof of Loss and Sworn Statement per the Berkley Policy on behalf of the Reed Food Technology ("Reed").  Based on the claims asserted, Berkley agreed to accept as measurable and supportable the sum of $229,430 for the Reed Estimate and pay Reed directly without prejudice and subject to a full reservation of rights, including the right to seek reimbursement, contribution and subrogation for those sums. *See* **EXHIBIT G.**

48.     Neither of the June 24, 2020 payments was a voluntary payment; rather, the payments were made to mitigate and resolve disputed Claims upon reasonable notice, without prejudice and under full reservation of rights.

49.     On or about June 24, 2020, AmTrust adjuster Michael Brady requested all reports and damage appraisals and identified an AmTrust claim number of 3180440-1.

50.     On June 25, 2020, Berkley forwarded seven (7) forensic reports to AmTrust outlining the path of investigation and the efforts undertaken by Berkley's experts to mitigate claims being asserted by direct and downstream customers of Bell.  However, AmTrust continued to refuse to pay any portion of the Claims and has not paid, nor reimbursed Berkley, for any portion of the Claims or for any portion of the Claims that Berkley has paid to Bell's customers.

51.     Further discussions between Berkley, Bell's insurance broker, and AmTrust continued for several weeks following the April 20, 2020 communication from AmTrust.  These discussions ultimately resulted in July 1, 2020 correspondence from Berkley's counsel to AmTrust wherein Berkley again demanded indemnification and a request for an immediate conference with AmTrust to discuss paying Bell's customers' claims.

4822-8488-7282

52.     On or about June 29, 2020, Bell submitted a Partial Proof of Loss and Sworn Statement on behalf of the Demakes claim. Berkley agreed to accept as measurable and supportable the sum of $97,955 and pay Demakes directly the amount without prejudice and subject to a full reservation of rights, including the right to seek reimbursement, contribution and subrogation for those sums.  *See* **EXHIBIT H.**

53.     On or about August 14, 2020, Berkley submitted a revised Demand for Indemnification based on payments made by or on behalf of Bell.

54.     On or about September 10, 2020, Bell submitted a Partial Proof of Loss and Sworn Statement on behalf of Paradise Tomato. Based on claims asserted in the amount of $271,388.05, Berkley agreed to recognize as measurable and supportable $265,928.64, again with notice to AmTrust and upon reservation and without prejudice to any rights that Berkley or Bell might have to seek reimbursement or contribution or subrogation.  *See* **EXHIBIT I.**

55.     Each of the payments that Berkley made was in reasonable anticipation of Bell's liability to each of the claimants.

56.     Each of the payments that Berkley made was also based on reasonable anticipation that there was a covered claim under the Associated Policy.

57.     In December 2020, AmTrust advised Berkley that Associated had reassigned the claim to Dawn Brazier.  Dawn Brazier made several requests for information, to which prompt responses were provided, but neither Associated nor AmTrust responded further to the objections and contentions raised by Bell and Berkley vis-à-vis Associated's denial of coverage.

58.     In January 2021, AmTrust advised Berkley that it had reassigned the claim yet again—this time to James Leonidas.  On February 3, 2021 Berkley supplied James Leonidas with six (6) additional forensic reports with schedules from McLarens and Meaden & Moore in support

13

of its claim for indemnification.

59.     Subsequently thereto, Bell submitted and executed its Final Proof of Loss and Sworn Statement acknowledging that Berkley had issued payment in total in the amount of $2,720,505.64 USD in satisfaction of the Claims referenced above.

60.     At no time after its initial demand and subsequent demand letters did Associated, either individually or through Amtrust, respond to Berkley's letters or reverse its coverage denial. In fact, the only actions taken by Associated or AmTrust have been to assign and reassign the claim to three different adjusters, none of which has provided a response or written acknowledgement that the claim was being reviewed or investigated.

## H.     Coverage Under the Associated Policy

61.     The incorporation of Bell's garlic flavoring into the finished products of Ventura Foods, Reed, Paradise Tomato, and Demakes caused physical injury to these customers' tangible food products.

62.     Alternatively, even if an off-taste is not considered to be a physical injury, the off-taste caused by the incorporation of Bell's garlic flavoring into Bell's customers' finished products, which had to be discarded or destroyed, resulted in loss of use of Bell's customers' finished products.

63.     The manufacture of the garlic flavoring and subsequent shipment of the garlic flavoring to Bell's customers for incorporation into their finished products was an "occurrence" under the Associated Policy.

64.     Associated had a duty to defend and indemnify Bell against the Claims because it was the primary insurer and faced with a covered claim for "property damage" and no exclusion in the Associated Policy or relied upon by Associated excludes coverage for the subject third-party

damages claims.

**I.     Berkley's Payments to Mitigate Claims Have Not Been Voluntary Payments**

65.    Berkley and Bell attempted to mitigate the third-party damages because Associated failed to respond and declined coverage inconsistently with the terms of the Associated Policy. Initially, the claimed aggregate quantum from Bell's customers was approximately $3,787,579.72. Berkley, on behalf of Bell, reduced the overall exposure through mitigation by approximately $1,000,000.

66.    Berkley's payments were made under reservation, and Berkley was not acting as a volunteer in protecting its insured

67.    Berkley, on behalf of Bell, acted to prevent the hazard created by Associated's coverage denial, which put Bell at significant financial risk because of the magnitude of the Claims and the potential exhaustion of the Associated Policy. Furthermore, Berkley and Bell consistently apprised Associated of claim developments and demands to no avail. It would be inequitable to allow Associated to rely on its Voluntary Payments provision to avoid its obligation to perform in circumstances where there was clearly coverage for the customer claims.

68.    When AmTrust, on behalf of Associated, denied coverage to Bell and refused to reconsider despite repeated requests, it lost control over the settlements effectuated by and on behalf of Bell, which were reasonable, measurable and supported by the analysis of McLarens and Meaden & Moore.

<u>**COUNT I**</u>
**DECLARATORY JUDGMENT**

69.    Berkley restates and realleges all previous paragraphs as if fully restated herein.

70.    Associated had a duty to defend and indemnify Bell against the Claims pursuant to Coverage A of the Associated Policy because the Claims constituted "property damage" during

the Associated Policy's policy period that was caused by an "occurrence."

71.     Associated had a duty to defend and indemnify Bell against the Claims pursuant to Coverage A of the Associated Policy because none of the Coverage A exclusions precludes coverage for third-party "property damage" resulting from the incorporation of the defective garlic flavoring into Bell's customers' finished products, which thereby physically injured or resulted in loss of use of Bell's customers' finished products.

72.     Associated's duty to defend and indemnify Bell against the Claims was primary to any duty owed by Berkley.

73.     Associated's coverage denial was erroneous and breached Associated's duties to Bell.  As a result, Associated is collaterally estopped from raising any coverage defenses under the Associated Policy.

74.     Berkley seeks contribution and/or reimbursement from Associated for all investigative costs and expenses and third-party damages that Berkley paid but that should have been paid by Associated under the Associated Policy and/or the Associated Umbrella Policy.

75.     For all of the foregoing reasons, an actual controversy exists between the parties, which vests in the Court the power to declare the rights and liabilities of the parties.

## COUNT II
## EQUITABLE SUBROGATION

76.     Berkley restates and realleges all previous paragraphs as if fully restated herein.

77.     Berkley, as subrogee, made payments to Bell's customers to satisfy Bell's customers' claims arising from defective garlic flavoring that caused property damage to Bell's customers' finished products into which the garlic flavoring was incorporated.

78.     As subrogee, Berkley was not acting as a volunteer payor.

79.     As subrogee, Berkley was not primarily but secondarily liable for the Claims.

16

4822-8488-7282

Associated, as the primary insurer, was primarily liable under the Associated Policy for the investigative and defense costs and the third-party damages paid to Bell's customers.

80.     Berkley paid the entire debt to Bell's customers, whereas Associated has not paid any of the debt to Bell's customers, thereby extinguishing liability.

81.     In this case, equitable subrogation will not work any injustice to the rights of others, namely Associated.

**COUNT III**
**EQUITABLE INDEMNITY**

82.     Berkley restates and realleges all previous paragraphs as if fully restated herein.

83.     Under the Berkley Policy and the Associated Policy, Berkley and Associated were both obligated to pay Bell's customers for the "property damage" that Bell's customers suffered. Berkley's obligation, however, was only supposed to arise if and when the Associated Policy and/or any other applicable valid and collectible insurance was exhausted.

84.     Berkley was forced to pay Bell's customers' "property damage" claims when Associated wrongly refused coverage.

85.     Under the Associated Policy, Associated bears actual liability to Bell and Bell's customers for the claims that Bell's customers have made to Bell resulting from the defective garlic flavoring that caused "property damage."

86.     Equity demands that Associated indemnify Berkley for Berkley's losses and payments to Bell's customers in full.

87.     Equitable indemnity requires Associated to reimburse Berkley for Associated's liability to Bell, Bell's customers, and Berkley in an amount to be determined at trial, plus reasonable costs, attorneys' fees and interest.

17

<u>COUNT IV</u>
**EQUITABLE CONTRIBUTION**

88.     Berkley restates and realleges all previous paragraphs as if fully restated herein.

89.     This claim is stated only with respect to the Associated Umbrella Policy.

90.     Upon information and belief, the Berkley Policy and the Associated Umbrella Policy are both excess policies that cover the same insured and insured risk.

91.     Associated breached its legal obligations to its insured (Bell) by failing to pay Bell's customers for all or portions of their claims against Bell that exceeded the applicable limits of the Associated Policy.

92.     Associated's breach of its legal duties to Bell is the direct and proximate cause of Berkley having to pay Bell's customers the entire portion of Bell's customers' claims.

93.     Since Berkley was liable to pay Bell's customers for their claims, Berkley and Associated, upon information and belief, share common liability to Bell and to Bell's customers, under the Berkley Policy and the Associated Umbrella Policy.

94.     Since Berkley is liable to Bell and Bell's customers under the Berkley Policy, equity demands that the burden of compensating Bell's customers for their injuries be distributed between Associated and Berkley in proportion to the parties' respective shares as between the Berkley Policy and the Associated Umbrella Policy.

95.     Associated is required to contribute to and reimburse Berkley to the extent that Berkley has discharged its obligation to Bell and Bell's customers in excess of what Bell and Bell's customers could justly claim from Berkley.

96.     As a direct and proximate result of Associated's wrongdoing, Berkley is entitled to a contributory award against Associated in an exact amount to be determined at trial, plus reasonable costs, attorneys' fees and interest.

18

4822-8488-7282

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Berkley Assurance Company prays that this Court grant it the following relief:

1.      Enter judgment on Berkley's Complaint against Associated;

2.      Order Associated to pay its fair share of the losses that its insured, Bell, has incurred;

3.      Declaring that Berkley's interpretation and application of the Berkley Policy, Associated Policy, and Associated Umbrella Policy is correct and entitles Berkley to payment from Associated;

4.      For its reasonable attorneys' fees and costs; and

5.      For any other relief that the Court deems just and equitable.

///

Dated:  October 6, 2021                              Respectfully submitted,

                                                     /s/ Meredith A. Webster
                                                     Meredith A. Webster          IL #6305145
                                                     Kutak Rock LLP
                                                     2300 Main Street, Suite 800
                                                     Kansas City, MO 64108
                                                     Phone: (816) 960-0090
                                                     Fax: (816) 960-0041
                                                     meredith.webster@kutakrock.com

                                                     *and*

                                                     Michael T. McDonnell, III *Pro Hac Pending*
                                                     Kutak Rock LLP
                                                     Suite 1100
                                                     1760 Market Street
                                                     Philadelphia, PA 19103-4104
                                                     Phone:  (215) 299-4384
                                                     Fax:  (215) 981-0719
                                                     michael.mcdonnell@kutakrock.com

                                                     **ATTORNEYS      FOR      BERKLEY
                                                     ASSURANCE COMPANY**

4822-8488-7282