IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BERKLEY ASSURANCE COMPANY,** | |
| **Plaintiff,** | |
| **v.** | Case No.: 21-cv-5303 |
| **ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.,** | |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS OPPOSED MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Berkley Assurance Company ("Berkley") states the following in further support

of its Motion for Judgment on the Pleadings[1]:

**INTRODUCTION**

This lawsuit arises out of payments involuntarily made by Berkley to settle claims against

its insured, Bell Flavors and Fragrances, Inc. ("Bell"), after Bell tendered the same claims to

Defendant Associated Industries Insurance Company, Inc. ("Associated") and Associated denied

coverage. The claims made against Bell stem from the incorporation of Bell's garlic flavoring into

its customers' finished products, which finished products were tainted by an ingredient in the garlic

flavoring.

Berkley pleads the following claims against Associated: Declaratory Judgment (Count I),

Equitable Subrogation (Count II), and Equitable Contribution (Count IV).[2] Berkley seeks a

---

[1] A substantially similar version of this supporting memorandum was previously filed as Doc. 24. The fully briefed motion was stricken from the docket per Doc. 46.

[2] Berkley previously agreed to voluntarily dismiss Count III. (Doc. 42 at p. 2 n.2). Berkley has not yet received Associated's consent to the limited stipulation of dismissal it proposed via e-mail on May 24, 2022.

1

determination that Associated's Commercial General Liability Policy—Policy No. AES1085302

01 (the "Associated Policy")—and Associated's Umbrella Policy—Policy No. EXA1055329 01—

provide coverage for the claims against Bell. Berkley further seeks a determination that the

Associated Policy should have paid the claims against Bell before Berkley's policy was obligated

to respond and that the Associated Umbrella Policy also should have paid the claims once the

Associated Policy was exhausted. Berkley accordingly seeks reimbursement from Associated for

payments that Berkley involuntarily made to protect Bell when Associated wrongfully denied

coverage to Bell.

## STANDARD OF REVIEW

In reviewing motions for judgment on the pleadings, courts look to "whether the pleadings

contain facts that allow the reasonable inference that the non-moving party could prevail in the

action." *Atain Specialty Ins. Co. v. Greer*, 182 F. Supp. 3d 873, 874 (S.D. Ill. 2016) (citing *Adams*

*v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014)). Courts will consider the complaint,

answer, and any written instruments attached to the pleadings in reaching their decision. *Id.* (citing

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Forseth v. Vill. of Sussex*, 199

F.3d 363, 368 (7th Cir. 2000)). The moving party is entitled to judgment when the non-moving

party cannot prove facts sufficient to support its position. *Federated Mut. Ins. Co. v. Coyle Mech.*

*Supply, Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (quoting *Scottsdale Ins. Co. v. Columbia Ins. Grp.,*

*Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)).

## ARGUMENT

I.     **ASSOCIATED WRONGFULLY DENIED COVERAGE TO BELL FLAVORS
       BECAUSE THERE WAS "PROPERTY DAMAGE" CAUSED BY AN
       "OCCURRENCE" FOR CLAIMS BELL FLAVORS WAS LEGALLY
       OBLIGATED TO PAY AND TO WHICH NO EXCLUSION APPLIED.**

        A.     **The Claims Against Bell Flavors Were for "Property Damage" Caused by an
       "Occurrence."**

2

4874-8603-8838

### 1. *Bell Flavors' Garlic Flavoring Damaged Customers' Finished Products.*

As relevant to the facts at hand, the Associated Policy defines "property damage" to mean either "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (Doc. 1 at ¶ 18; Doc. 15 at ¶ 18). Physical injury to third-party tangible property occurred the moment that Bell Flavors' garlic flavoring was incorporated into third-parties' products, thereby contaminating the third-parties' products. *See Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 814 (7th Cir. 1992) (applying Illinois law and stating that "… the incorporation of a defective product into another product inflicts physical injury in the relevant sense on the latter at the moment of incorporation …"); *Naumes, Inc. v. Chubb Custom Ins. Co.,* No. 05-1327-HA, 2007 WL 54782, at *4–5 (D. Or. Jan. 5, 2007); *Zurich Am. Ins. Co. v. Cutrale Citrus Juices USA, Inc.*, No. 5:00-CV-149-OC-10GRJ, 2002 WL 1433728, at *2–4 (M.D. Fla. Feb. 11, 2002); *Chubb Ins. Co. of N.J. v. Hartford Fire & Ins. Co.*, No. 97 CIV. 6935 LAP, 1999 WL 760206, at *8 (S.D.N.Y. Sept. 27, 1999), *aff'd*, 229 F.2d 1135 (2d Cir. 2000); *see also Sokol & Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 422 (7th Cir. 2005) (distinguishing sealed individual peanut butter packets from the spoiled peanut butter being mixed with other ingredients in cookie mix boxes); Doc. 1 at ¶¶ 1, 26, 28–31. It is of no matter that the combined product ultimately may have been consumable either. *Naumes*, 2007 WL 54782, at *4–5; *Cutrale Citrus Juices USA, Inc.*, 2002 WL 1433728, at *3 (" … the fact that the adulteration does not make the resulting blend totally unfit for human consumption (so that the blended juice might still be marketed under different labeling), does not alter the conclusion that damage has occurred").

It is not apparent here that Associated disclaimed coverage because there was not "property damage." (Doc. 1-4). To the extent, however, that it did, Associated's denial of coverage to Bell Flavors based on a claimed lack of "property damage" is at odds with the aforementioned

3

prevailing law and is erroneous.  (*Id.* at p. 4; Doc. 15 at Aff. Defense Nos. 11, 13).

### 2.    *The Damage to Customers' Finished Products Was an "Occurrence."*

Associated's claimed lack of an "occurrence," on the basis that allegedly breach of contract and breach of warranty claims are the only claims at issue, is likewise no defense to coverage under Associated's policies. (Doc. 1 at ¶ 35; Doc. 1-4 at p. 4; Doc. 15 at ¶ 35 & Aff. Defense No. 10). Breach of contract and breach of warranty are not the only potential claims at issue.  Negligence or negligent misrepresentation are just two example theories of recovery in these types of incorporation/contamination cases, and such claims would qualify as an "occurrence" under Associated's policies. *See*, *e.g.*, *Naumes*, 2007 WL 54782, at *2 (negligence claim); *Chubb Ins. Co. of N.J.*, 1999 WL 760206, at *2 (products liability tort claim asserted); *Elco Indus., Inc. v. Liberty Mut. Ins. Co.*, 90 Ill. App. 3d 1106, 1110, 46 Ill. Dec. 319, 414 N.E.2d 41 (1980) (negligence claim).  Associated failed to take this into account in its denial letter. (Doc. 1-4).

Furthermore, recognizing the accidental nature of these types of incorporation/contamination claims, courts in Illinois and across the country have rejected insurers' attempts to disclaim coverage on the basis that only breach of contract or warranty is at issue and have held that damages are unintended and unexpected where insureds are "unaware … of a defect in [their] component of a product, which defect diminishes the value of the product into which it is incorporated, resulting in damage." *See Chubb Ins. Co. of N.J.*, 1999 WL 760206, at *8; *see also Naumes, Inc.*, 2007 WL 54782, at *4 (citing *Goodyear Rubber & Supply Co. v. Great Am. Ins. Co.*, 471 F.2d 1343, 1344 (9th Cir. 1973)) ("… [I]nsurers may not refuse coverage under a liability policy simply because a claim may contain an allegation for breach of warranty.  Instead, the nature of the damage alleged controls coverage."); *Cutrale Citrus Juices USA, Inc.*, 2002 WL 1433728, at *3 (finding in favor of defendant's argument that there was coverage for the adulterated product regardless of whether the underlying claim sounded "in tort or in contract or

4

4874-8603-8838

in both"); *Elco*, 90 Ill. App. 3d at 1109–10 (relying on "[o]ther courts [that] have reasoned that in the context of liability insurance policies, the word 'accident' should not be construed to exclude claims involving negligence or breach of warranty[ because] otherwise the insured is afforded little or no protection" to hold that there was an "occurrence" because of the installation of defective pins into engines).

This is consistent with Illinois' standard that courts are supposed to determine occurrences based on whether "the person performing the acts leading to the result intended or expected the result." *Country Mut. Ins. Co. v. Carr*, 372 Ill. App. 3d 335, 341, 311 Ill. Dec. 171, 867 N.E.2d 1157 (2007) (citing *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 77–78, 161 Ill. Dec. 280, 578 N.E.2d 926, 932 (1991)). Under this standard, assuming the theory of recovery will be in contract or based on breach of a warranty is not enough to disclaim coverage because there is purportedly no "occurrence." *See id.* at 343 (refusing to create a blanket rule that a "breach-of-contract claim can never allege an 'occurrence.'"); *see also Sigma Chi Corp. v. Westchester Fire Ins. Co.*, 587 F. Supp. 2d 891, 895–95 (N.D. Ill. 2008) (quoting *Krueger Int'l, Inc. v. Royal Indem. Co.*, 481 F.3d 993, 996 (7th Cir. 2007)) ("[I]f the act that precipitates the insured's liability is negligent and therefore tortuous [sic], the fact that it's also a breach of contract does not preclude coverage, since coverage is based on the specific acts insured against rather than on the particular remedy sought by the person harmed by the act.").

Associated cannot point to any facts indicating Bell Flavors expected or intended that its garlic flavoring would contaminate its customers' products and, indeed, Associated's denial letter does not articulate any such facts. (Doc. 1-4). Bell Flavors had never had any prior complaints. (Doc. 1 at ¶ 27). When Bell Flavors received complaints in fall 2019, it was only because testing and analysis had linked the contamination to Bell Flavors' garlic flavoring. (*Id.* at ¶¶ 30, 32).

5

Therefore, Associated wrongly denied coverage because of the claimed lack of an "occurrence."

Accordingly, for the reasons set forth above, there is "property damage" caused by an "occurrence" under Associated's policies. Further, for the reasons set forth below, no exclusion in Associated's policies applies.

**B.      The Exclusions Cited by Associated to Disclaim Coverage Are Inapplicable to the Claims Against Bell Flavors.**

Associated cited only two policy exclusions under Coverage A in its December 26, 2019 denial letter:  Exclusions k and n.  (Doc. 1-4).  Curiously, *just a few weeks shy of two years later*, Associated now also cites Exclusions l and m in its Affirmative Defenses.  (Doc. 15 at Aff. Defense Nos. 15–16).  Even notwithstanding Associated's extended and unnecessary delay in asserting these two new exclusions, and despite there being no new facts, none of the exclusions asserted by Associated applies to the subject claim.

**1.      *Associated Cannot Disclaim Coverage Under Exclusion k Because The Garlic Flavoring Cannot Be Separated from the Finished Product; Even If It Could Be, the Third-Party Property Damage Would Not Be Excluded.***

Exclusion k—the Your Products Exclusion—is an unambiguous exclusion that "excludes damage to all of the insured's products." *Fremont Indem. Co. v. Special Earth Equip. Corp.*, 131 Ill. App. 3d 108, 115, 86 Ill. Dec. 12, 474 N.E.2d 926 (1985); Doc. 1-2 at p. 22.  It does not exclude surrounding damage, such as removal and repair/installation costs. *Fremont Indem. Co.*, 131 Ill. App. 3d at 115, 86 Ill. Dec. 12, 474 N.E.2d 926.  Where an insured's product is incorporated into a third-party's product or work and it is the third-party product or work that is damaged and for which damages are sought, Exclusion k has no application at all. *See U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 193 Ill. App. 3d 1087, 1100, 140 Ill. Dec. 907, 550 N.E.2d 1032 (1989) (involving asbestos insulation in buildings).

Bell Flavors' customers asserted claims for damages to *their* finished products, not to *Bell*

6

*Flavors'* product. The coverage that Bell Flavors accordingly sought was not coverage for damage to its own product. Indeed, such a claim would be nonsensical. This is not a construction claim where other materials and components are able to be removed to access the insured's defective product and remove it. Bell Flavors' garlic flavoring was indivisible from its customers' finished products once it was incorporated therein.

Accordingly, Associated cannot rely on Exclusion k to disclaim coverage. (*See* Doc. 1-4 at p. 5; Doc. 15 at Aff. Defense No. 14).

### 2. *Associated Cannot Disclaim Coverage Under Exclusion l Because Customers Were Not Seeking Damages for Bell Flavors' Work.*

For similar reasons as set forth in the previous sub-section, Exclusion l—the Your Work Exclusion for completed operations—does not apply to the facts at hand. (Doc. 1-2 at p. 22; Doc. 15 at Aff. Defense No. 15). The damages claimed must be damages to an insured's own work for the exclusion to apply. *Wilkin Insulation Co.*, 193 Ill. App. 3d at 1100, 140 Ill. Dec. 907, 550 N.E.2d 1032. By contrast, third-party damage caused by an insured's work is insured. *State Farm Fire & Cas. Co. v. Tillerson*, 334 Ill. App. 3d 404, 268 Ill. Dec. 63, 777 N.E.2d 986, 992 (2002) ("The risk intended to be insured is the possibility that the goods, products[,] or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.").

To the extent this product-type claim even could fit within the Your Work Exclusion, the third-party damage caused to Bell Flavors' customers' finished products is unquestionably the type of damage that was intended to be covered under Illinois law. *See id.* The customers' finished products were off-tasting and metallic-flavored once Bell Flavors' garlic flavoring was incorporated therein. (Doc. 1 at ¶ 28).

7

### 3. Associated Cannot Disclaim Coverage Under Exclusion m Because "Impaired Property" Is Not at Issue.

Exclusion m—the Impaired Property Exclusion—is inapplicable to the facts at hand and, thus, cannot serve as grounds to disclaim coverage. (Doc. 15 at Aff. Defense No. 16).

Exclusion m is limited in scope. It applies either when property has not been physically injured or when there is "'[p]roperty damage' to 'impaired property'". (Doc. 1-2 at p. 23). The incorporation of the off-tasting garlic flavoring into Bell Flavors' customers' finished products caused physical injury. *See* Section I.A., *supra*. This means Associated must prove the customers' finished products are "impaired property." Associated cannot meet this burden.

The Associated Policy defines "impaired property" as follows:

> … tangible property, other than "your product" or "your work" that cannot be used or is less useful because:
>
> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

(Doc. 1-2 at p. 30).

Bell Flavors' garlic flavoring became indivisible from its customers' finished products once it was incorporated therein. (Doc. 1 at ¶ 26). One cannot just remove garlic flavoring from sauces or meat products once it is all mixed together. (*See id.*). This is what distinguishes this case from *Sokol & Co.* There, the rancid peanut butter paste was packaged separately from the remaining ingredients in the cookie mix. *See Sokol & Co.*, 430 F.3d at 422. It was necessary only to pluck the rancid packets from the boxes of cookie mix and replace them to restore the boxes of cookie mix to usable quality. *Id.* That is why Exclusion m applied in that case. *Id.* at 423.

4874-8603-8838

A further problem for Associated is the exception to Exclusion m when it is coupled with

Associated's Affirmative Defenses to the Complaint.  Associated pled the following affirmative

defenses:

> <u>Affirmative Defense No. 18:</u>   Berkley's claims against Associated are
> barred, in whole or in part, to the extent that the insured's product at issue in the
> Claims was not defective when it left the insured's control.
>
> <u>Affirmative Defense No. 19:</u>   Berkley's claims against Associated are
> barred, in whole or in part, to the extent that the insured's product at issue in the
> Claims was substantially altered after it left the insured's control.
>
> <u>Affirmative Defense No. 20:</u>   Berkley's claims against Associated are
> barred, in whole or in part, to the extent that the insured's product at issue in the
> Claims was misused or used improperly after it left the insured's control.

(Doc. 15 at Aff. Defense Nos. 18–20).  The exception to Exclusion m states that "[t]his exclusion

does not apply to the loss of use of other property arising out of sudden and accidental physical

injury to 'your product' or 'your work' after it has been put to its intended use."  (Doc. 1-2 at p.

23).  If, as Associated seems to allege by these affirmative defenses, the off-taste occurred only

suddenly and accidentally as part of the final incorporation into customers' finished products,

Associated has pled itself out of the exclusion, even if it could apply.

> **4.**   ***Associated Cannot Disclaim Coverage Under Exclusion n Because Bell
> Flavors' Product Failed While in Use and Caused Third-Party Damage
> and There Was No Recall of Similar Products Suspected to Be Damaged.***

Associated's continued assertion of Exclusion n—the Sistership Exclusion—to disclaim

coverage remains as confounding as it was when it was first raised in 2019.  (Doc. 1-4 at pp. 4–5;

Doc. 15 at Aff. Defense No. 17).  A sistership exclusion is designed to exclude coverage "in cases

where, because of the actual failure of the insured's product, similar products are withdrawn from

use to prevent the failure of these other products, which have not yet failed but are suspected of

containing the same defect."  *United Nat'l Ins. Co. v. Faure Bros. Corp.*, 409 Ill. App. 3d 711,

719, 351 Ill. Dec. 90, 949 N.E.2d 1185 (2011) (quoting *Wilkin Insulation Co.*, 144 Ill.2d at 81, 161

9

Ill. Dec. 280, 578 N.E.2d 926). It "does not apply, however, to the product that has already failed while in use and caused damages to the property of a third party." *Id.*; *see also Int'l Envtl. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 843 F. Supp. 1218, 1229–30 (N.D. Ill. 1993).

In *United National Insurance Co.*, the insured mislabeled chemicals it was warehousing for a third-party and, after shipping the mislabeled chemicals to the third-party's customer, the customer blended the mislabeled chemicals into an adhesive that did not perform as it was supposed to because the formula was incorrect. *Id.* at 714. The court rejected application of the Sistership Exclusion under these facts. *Id.* at 720. The mislabeled chemicals had already failed and caused damage to a third-party, and the third-party was not seeking to withdraw products to prevent future failure of products. *Id.* at 719–20.

Here, Associated cannot establish that there was a recall. Perhaps more importantly, it has never been Bell Flavors' product that was claimed to be damaged but Bell Flavors' customers' finished products. The failure of Bell Flavor's garlic flavoring and the damage to Bell Flavors' customers' finished products was also known at the time claims were reported to Bell Flavors. (Doc. 1 at ¶¶ 29–31, 50). Exclusion n is limited to the "loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: **(1)** 'Your product'; **(2)** 'Your work'; or **(3)** 'Impaired property'". (Doc. 1-2 at p. 23). "Impaired property" is not at issue for the reasons set forth in Section I.B.3., *supra*. "Your product" and "your work" are not at issue either. This is not like *Sokol & Co.*, where the product withdrawn, replaced, and disposed of was the insured's individually sealed rancid peanut butter packets. *Sokol & Co.*, 430 F.3d at 424.

Exclusion n does not apply to the facts at hand under the precedent in this jurisdiction. Therefore, this Court should disregard it as a basis to deny coverage under Associated's policies.

10

### C. Bell Flavors' Customers' Claims Not Only Were Covered Under the Associated Policy But There Was a Legal Obligation to Pay Them.

Berkley had to make a choice: step in (under reservation) to perform Associated's duties for it or leave their common named insured out on a limb. Berkley stepped up. (Doc. 1 at ¶¶ 40–41, 45, 48, 60). However, Associated's choice to linger on the sidelines while another insurer fulfilled its duties is not permissible under Illinois law. *See W. Am. Ins. Co. v J.R. Constr. Co.*, 334 Ill. App. 3d 75, 87, 267 Ill. Dec. 807, 777 N.E.2d 610 (2002) (quoting *Cent. Mut. Ins. Co. v. Kammerling*, 212 Ill. App. 3d 744, 748, 156 Ill. Dec. 826, 571 N.E.2d 806 (1991)) (an insurer is not permitted to "simply stand on the sidelines" while another performs its contractual duties); *see also Sokol*, 430 F.3d at 421.

In wrongfully denying coverage to Bell Flavors, Associated ignored that the duty to indemnify Bell Flavors against its customers' covered claims was ripe irrespective of whether a lawsuit had been filed and that Associated should have responded. *See Cincinnati Ins. Co. v. H.D. Smith Wholesale Drug Co.*, 410 F. Supp. 3d 920, 933 (C.D. Ill. 2019) (quoting *Commonwealth Edison Co. v. Nat'l Union Fire Ins. Co.*, 323 Ill. App. 3d 970, 256 Ill. Dec. 675, 752 N.E.2d 555, 566 (2001)); *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill.2d 141, 154, 290 Ill. Dec. 155, 821 N.E.2d 206 (2004). The Associated Policy's Coverage A Insuring Agreement establishes that Associated has a duty to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies." (Doc. 1 at ¶ 17; Doc. 15 at ¶ 17). There is no prerequisite in that policy language that requires a lawsuit to be filed before Associated is obligated to respond to a third-party claim. *Sokol & Co.*, 430 F.3d at 422. The only prerequisite is a covered claim. *See id.*

In fact, a legal obligation to pay "refers to any obligation which is binding and enforceable under the law, whether pursuant to contract or tort liability." *Sigma Chi Corp.*, 587 F. Supp. 2d at

11

896 (adopting the reasoning of *Vandenberg v. Superior Court*, 21 Cal.4th 815, 88 Cal. Rptr. 2d 366, 982 P.2d 229, 246 (1999)). Accordingly, Illinois courts have rejected insurers' arguments that there was no legal obligation to pay even where the claims at issue arose out of breaches of various agreements between the insured and third parties—one of Associated's claimed bases for denial. *See id.*; Doc. 1-4 at p. 4.

Associated did not even exercise the option of retaining counsel to defend Bell Flavors before suit was filed, in order to assist in effectuating settlement or putting Bell Flavors in a better position should suit be filed. (Doc. 1 at ¶ 38; Doc. 15 at ¶ 38). Instead, Associated's decisions and omissions exacerbated the likelihood that Bell Flavors would be subjected to multiple lawsuits. Bell Flavors would then have had to try to refute liability in multiple lawsuits after identifying one of its ingredients as the cause of loss, attempt to settle these lawsuits (likely at a higher cost to Bell Flavors and its business), and then prove its own liability to Associated to seek reimbursement. (*See* Doc. 1 at ¶ 32). This course of action is neither required nor appropriate to trigger indemnity coverage in Illinois. *See H.D. Smith Wholesale Drug Co.*, 410 F. Supp. 3d at 933.

However, because Berkley stepped up and retained a forensic investigation group and forensic auditors to investigate, evaluate, and quantify Bell Flavors' customers' claimed damages, the claims against Bell Flavors were able to be resolved without litigation. (*Id.* at ¶¶ 34, 40–42, 46–47, 50, 52, 54, 58, 59). Berkley did all this under reservation because it was Associated's legal duty to pay first under the Associated Policy in that it is the primary insurer to Bell Flavors and then to also pay under the Associated Umbrella Policy.

Associated's position as primary insurer with respect to the Associated Policy, and Berkley's position as excess to Associated, is made apparent by the Other Insurance clauses of the respective policies. The Associated Policy provides, in part, as follows:

4874-8603-8838

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

(Doc. 1 at ¶ 22). By contrast, the Berkley Policy provides as follows:

O. OTHER INSURANCE: The insurance provided under this Policy will be excess over any other valid and collectible bond or insurance. If **you** have other insurance against a loss covered by this Policy that purports to be excess of this insurance, **we** will not be liable under this Policy for a greater proportion of such loss and **claims** expenses than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of insurance of all valid and collectible insurance against such loss. If **you** have other insurance provided by a W. R. Berkley member company against a loss covered by this Policy, the maximum Limit of Insurance under all policies will not exceed the highest applicable Limit of Insurance available under any one Policy.

(Doc. 1 at ¶ 15).

Where a primary other insurance clause is juxtaposed with an excess other insurance clause, the insurance company with the excess other insurance clause provides excess coverage. *Ind. Ins. Co. v. Powerscreen of Chi., Ltd.*, 2012 IL App (1st) 103667, ¶ 39, 363 Ill. Dec. 339, 975 N.E.2d 141 (2012). The Associated Policy is a primary policy unless there is an applicable exception in Paragraph b of the other insurance clause. (Doc. 1 at ¶ 22). There is no exception applicable to these facts. (*Id.*).

Moreover, the Associated Policy is valid and collectible other insurance. Valid and collectible other insurance refers to "an insurance policy which is legal and valid, as distinguished from one which was procured by fraud, or cannot be collected due to insolvency of the company." *Northbrook Prop. & Cas. Ins. Co. v. U.S. Fid. & Guar. Co.*, 150 Ill. App. 3d 479, 483, 103 Ill.

13

4874-8603-8838

Dec. 500, 501 N.E.2d 817 (1986). There is no prerequisite of a judgment against the insured before a policy may be deemed valid and collectible. *Id.* The Associated Policy not only is legal and valid, but for the reasons set forth in this Section I and its sub-sections, the Associated Policy provides coverage for the claims at issue.

Associated had a duty—a primary duty under the Associated Policy—to respond to the covered claims against Bell Flavors when they were tendered. Instead, it wrongfully denied coverage and left all responsibility to Berkley. Associated has an obligation to reimburse Berkley for the liability payments that Berkley made in Associated's stead. Accordingly, this Court should grant Berkley's motion for judgment on the pleadings.

## II. BERKLEY'S PAYMENTS TO RESOLVE THE CLAIMS AGAINST BELL FLAVORS WERE NOT VOLUNTARY PAYMENTS.

Associated has raised an affirmative defense based on claimed voluntary payments. (Doc. 15 at Aff. Defense No. 22). However, the moment that Associated denied coverage to Bell, Associated lost the right to claim a voluntary payment as a defense to indemnifying Bell for covered claims. *In re HA 2003, Inc.*, 310 B.R. 710, 723 (N.D. Ill. 2004) ("The issue presented … is whether Zurich has lost the right to consent to a settlement by denying coverage of HA-LO's claims against Kelley. … The court agrees. Zurich may not deny coverage and still maintain control over the settlement between HA-LO and Kelley.") This rule applies irrespective of whether the carrier had a duty to defend. *Id.* at 724 (citing *Commonwealth Edison Co.*, 323 Ill. App. 3d at 985, 752 N.E.2d 555, 256 Ill. Dec. 675).

Even putting aside the invalidity of this defense, this is not a voluntary payments situation. Voluntary payments refer to pre-tender payments and are intended to prevent collusion between the insured and the injured party. *Pekin Ins. Co. v. Xdata Sols., Inc.*, 2011 IL App (1st) 102769, ¶ 29, 354 ll. Dec. 654, 958 N.E.2d 397 (2011). Further, an excess insurer "must have the right to

14

step in and settle a claim where its interest in capping its own liability is potentially at stake." *Progressive Ins. Co. v. Universal Cas. Co.*, 347 Ill. App. 3d 10, 282 Ill. Dec. 953, 807 N.E.2d 577, 589 (2004).

Here, Berkley did not just accept Bell's customers' claims at face value and pay them. The source of the contamination of the customers' products had been traced to an ingredient in Bell's garlic flavoring. (Doc. 1 at ¶¶ 25, 30, 32). After the tender of claims, Berkley retained a forensic investigation group and forensic auditors. (*Id.* at ¶¶ 34, 40). The review conducted by the auditors yielded deductions from the damages claimed by Bell's customers—sometimes in the hundreds of thousands of dollars. (*Id.* at ¶¶ 42, 46–48, 52–56). This was never a situation where Bell (or Berkley) made payments that there was no obligation to make. To the contrary, these were contested claims wherein legal liability existed and payments were made under reservation to protect the insured and avoid costly and damaging litigation. Associated should not escape its obligations to Bell because it chose to sit on the sidelines and leave Bell vulnerable to multi-million dollar losses.

## CONCLUSION

Berkley is entitled to judgment on the pleadings because there is no reasonable inference that Associated could prevail under the foregoing facts. There were covered claims for "property damage" to which no exclusion applied and that Associated had the duty to pay first. Instead, Associated denied coverage. Berkley, as the insurer whose coverage was excess of Associated's, stepped up under reservation to protect Bell against the covered claims Bell was legally obligated to pay. In doing so, Berkley protected Bell against the lawsuits that would have otherwise ensued.

For all the reasons set forth herein, this Court should find that Associated wrongfully denied coverage to Bell for the subject claims and that Associated is obligated to reimburse

4874-8603-8838

Berkley.

Dated: October 6, 2022.                                Respectfully submitted,


                                                       /s/ Meredith A. Webster

                                                       Meredith A. Webster        IL #6305145
                                                       Kutak Rock LLP
                                                       2300 Main Street, Suite 800
                                                       Kansas City, MO 64108
                                                       Phone: (816) 960-0090
                                                       Fax: (816) 960-0041
                                                       meredith.webster@kutakrock.com

                                                       *and*

                                                       Michael T. McDonnell, III
                                                       Kutak Rock LLP
                                                       Two Logan Square
                                                       100 N. 18th Street, Suite 1920
                                                       Philadelphia, PA 19103-2707
                                                       Phone: (215) 299-4384
                                                       Fax: (215) 981-0719
                                                       michael.mcdonnell@kutakrock.com
                                                       **ATTORNEYS     FOR     BERKLEY
                                                       ASSURANCE COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 6, 2022, a true and correct copy of the above and foregoing was filed using the Court's CM/ECF e-filing system, which will send notification of such filing to the following counsel of record:

        James J. Hickey
        Kennedys CMK LLP
        30 South Wacker Drive, Suite 3650
        Chicago, IL 60606
        james.hickey@kennedyslaw.com
        ATTORNEYS FOR DEFENDANT



                                                       /s/ Meredith A. Webster
                                                       Attorney for Plaintiff

4874-8603-8838